IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CAROLYN S. WALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:15CV01089 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Carolyn S. Wall, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 14; see also Docket Entry 12 (Plaintiff's Brief), Docket Entry 15 (Defendant's Memorandum)). Plaintiff filed a Reply Brief (Docket Entry 16) responding to Defendant's arguments in support of her Motion for Judgment on the Pleadings (Docket Entries 14, 15). For the reasons that follow, the Court should enter judgment for Defendant.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of January 1, 2010.  (Tr. 200-15.)  Upon denial of those applications initially (Tr. 70-96, 127-31) and on reconsideration (Tr. 97-126, 135-52), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 153-54).[1]  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 24-69.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 7-23.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5, 6, 336-37), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2014.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since April 8, 2012, the amended alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: diabetes mellitus, peripheral neuropathy, seizure disorder, sleep apnea, left knee dysfunction, ganglion cyst, cervicalgia, depression and borderline intellectual functioning.
>
> . . .

---

[1] Prior to the hearing, Plaintiff amended her alleged onset date to April 8, 2012, the date on which she stopped receiving unemployment compensation.  (See Tr. 10, 30-31, 229.)

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . . She cannot climb ropes, scaffolds or ladders; she can occasionally climb ramps or stairs; and she requires a sit/stand option with the ability to sit and/or stand at will. She is limited to simple, routine, repetitive tasks.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from April 8, 2012, through the date of this decision.

(Tr. 12-23 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

3

Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's]

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process,
(continued...)

7

### B. Assignment of Error

In Plaintiff's sole assignment of error, she contends that "[t]he ALJ erred in formulating both his RFC assessment and the dispositive hypothetical question to the [VE] by failing to include any limitation consistent with his finding that [Plaintiff] had moderate limitations in concentration, persistence or pace [("CPP")]" in violation of Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). (Docket Entry 12 at 5.) In particular, Plaintiff asserts that the ALJ's restriction to simple, routine, repetitive tasks ("SRRTs") does not account for a moderate deficit in CPP (Docket Entry 12 at 4-5 (citing Tr. 55-56)), because, under Mascio, "an ALJ does not account 'for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work'" (id. (quoting Mascio, 780 F.3d at 638, in turn quoting Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011))).

Plaintiff further relies on Mascio for the propositions that "the ability to perform simple tasks differs from the ability to stay on task" (id.), and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]" (id.). According to Plaintiff, the ALJ's statement that he "only partially agree[d] with the findings and conclusions of the State Agency psychological

---

⁵ (...continued)
review does not proceed to the next step.").

consultants" (Tr. 15) "did not provide a logical bridge between [the ALJ's] step three finding and his RFC assessment" (Docket Entry 12 at 8), where the ALJ failed to "specify[] which findings and or which conclusions" the ALJ credited (id. (discussing Boyet v. Colvin, No. 1:14CV762, 2016 WL 614708, at *6 (M.D.N.C. Feb. 16, 2016) (unpublished), and Salmon v. Colvin, No. 1:12CV1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (unpublished)); see also id. at 9-10 (citing, as further support, Burrow v. Colvin, No. 1:15CV163, 2016 WL 1258840, at *5-6 (M.D.N.C. Mar. 28, 2016) (unpublished), Pulliam v. Colvin, No. 1:13CV176, 2016 WL 843307, at *6-7 (M.D.N.C. Mar. 1, 2016) (unpublished), and Trexler v. Colvin, No. 1:14CV1085, 2016 WL 715758, at *3 (M.D.N.C. Feb. 22, 2016) (unpublished)). Plaintiff's arguments fall short.

The Fourth Circuit has held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638.[6] However, the Mascio court also allowed for the possibility that an ALJ could adequately explain why the mental RFC in question sufficiently encompasses a moderate limitation in CPP:

> Perhaps the ALJ can explain why [the plaintiff's] moderate limitation in [CPP] at step three does not translate into a limitation in [her RFC]. For example, the ALJ may find that the [CPP] limitation does not

---

[6] The Fourth Circuit decided Mascio on March 18, 2015, see Mascio, 780 F.3d at 632, eight months after the ALJ issued his decision in this matter on July 18, 2014 (see Tr. 23).

> affect [the plaintiff's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the [VE]. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted). A neighboring district court recently had occasion to discuss this very point:

> Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (Magistrate Judge's Report & Recommendation adopted by District Judge) (unpublished) (emphasis added).

Here, the ALJ's decision provides a sufficient explanation as to why a limitation to SRRTs sufficiently accounted for Plaintiff's moderate limitation in CPP. First, the ALJ discussed Plaintiff's testimony regarding her mental symptoms, but concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible." (Tr. 18.)[7]

---

[7] Plaintiff has not challenged the ALJ's credibility analysis. (See Docket Entry 12 at 3-10.)

Second, the ALJ provided a thorough summarization of Plaintiff's mental health treatment, making the following, pertinent observations:

- In July 2012, Plaintiff voluntarily admitted herself to a hospital with increasing psychotic and depressive symptoms, but displayed "no behavioral problems and denied any suicidality throughout her hospital admission." (Tr. 20; see also Tr. 523-27.)

- During post-hospitalization follow-up visits, treatment providers described Plaintiff as "pleasant and cooperative" and mental status examinations showed "marked improvement in [Plaintiff's] mood" and "continued improvement in her symptoms." (Id.; see also Tr. 531-54, 593-603, 648-657, 663-69, 699-705.)

- Consultative examiner David C. Johnson, M.A., "indicated that [Plaintiff] may exaggerate some symptoms at times." (Tr. 21; see also Tr. 454.)[8]

Third, the ALJ emphasized the wide array of daily activities that Plaintiff could perform (all of which require some ability to focus), including working crossword puzzles, watching movies, caring for her grandchildren (aged six, eight, and nine) two to three times per week while her daughter attended church or worked shifts at a fast food restaurant, grocery shopping, cooking, cleaning, caring for her 90-year-old father who lived with her, attending church, and reading her Bible. (Tr. 20, 21.)

Fourth, the ALJ also discussed and weighed the opinion evidence as it related to Plaintiff's ability to function mentally.

---

[8] In fact, Mr. Johnson noted that Plaintiff "appear[ed] to have poor concentration but [it] may be embellished a bit" (Tr. 455), and concluded that Plaintiff retained the mental ability to perform SRRTs (see Tr. 456).

11

(See Tr. 14-15, 21.) The ALJ observed that Plaintiff's mental health progress notes revealed Global Assessment of Functioning ("GAF") scores ranging from 39 to 55,[9] but discounted those scores as inconsistent with "essentially unremarkable" mental status examinations in those progress notes and with the record as a whole. (Tr. 21.)[10]

Further, contrary to Plaintiff's argument (see Docket Entry 12 at 6-10), the Court can meaningfully review the ALJ's analysis of the state agency psychological consultants's opinions. Although the ALJ stated that he "only partially agreed" with the state agency consultants's opinions without specifically listing the findings with which he agreed and disagreed (Tr. 15), comparison of the consultants's findings with the ALJ's determinations makes abundantly clear which of the consultants's findings the ALJ credited. (Compare Tr. 15-16, 17, with Tr. 74-75, 79, 102, 103, 106.) Moreover, as relevant to Plaintiff's ability to stay on task, the ALJ expressly noted that both state agency consultants found that Plaintiff suffered moderate limitation in CPP (see Tr.

---

[9] The GAF is a numeric scale from 0 to 100 representing a clinician's judgment of an individual's social, occupational and school functioning "on a hypothetical continuum of mental health-illness." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) ("DSM-IV-R"). A GAF of 31 to 40 indicates "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." DSM-IV-R 34 (bold font omitted). A GAF of 41 to 50 reflects "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning." Id. A new edition of the leading treatise discontinued use of the GAF. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

[10] Plaintiff has not challenged the ALJ's evaluation of the GAF scores in the record. (See Docket Entry 12 at 3-10.)

12

15; see also Tr. 74, 102), but that, despite that concentrational deficit, Plaintiff remained mentally able to perform work limited to SRRTs (see Tr. 15; see also Tr. 75 ("[Plaintiff] should be able to perform SRRTs at this time"), 79 ("[Plaintiff] . . . is able to maintain attention and concentration for 2 hours at a time as required for the performance of simple tasks" and "is capable of performing SRRTs" (emphasis added)), 103 ("[Plaintiff] should be able to perform SRRTs at this time"), 106 "[Plaintiff] . . . is able to maintain attention and concentration for 2 hours at a time as required for the performance of simple tasks" (emphasis added)), 107 ("[Plaintiff] is capable of performing SRRTs")). Consistent with those opinions, the ALJ found that Plaintiff suffered moderate limitation in CPP (see Tr. 15), and included a restriction to SRRTs in the RFC (see Tr. 17).

As a final matter, the Court should find readily distinguishable the cases relied on by Plaintiff. In all of those cases, the ALJ's decision failed to explain an inconsistency, either between the state agency consultants' opinions or between those consultants' opinions and the ALJ's RFC, regarding the plaintiff's ability to stay on task. See Burrow, 2016 WL 1258840, at *5-6 (finding reversible error under Mascio where ALJ did not reconcile consultative examiner's and state agency consultants' varying opinions regarding the plaintiff's ability to maintain attention and concentration); Pulliam, 2016 WL 843307, at *6-7

13

(remanding under Mascio where ALJ grouped state agency consultants' opinions "together and adopted both without distinguishing them," where opinions differed on the plaintiff's ability to stay on task); Trexler, 2016 WL 715758, at *3 (ordering remand pursuant to Mascio because ALJ expressly relied on state agency consultant's opinion but inexplicably did not adopt his limitations to a "low stress, low social and low production environment"); Boyet, 2016 WL 614708, at *6 (deeming failure to account for moderate limitation in CPP reversible error where ALJ gave "great weight" to state agency consultants's opinions but neither consultant found any limitation in CPP or assessed Plaintiff's mental RFC); Salmon, 2015 WL 1526020, at *3 (ruling remand appropriate under Mascio because ALJ adopted state agency consultant's opinion but failed to include consultant's specific language regarding Plaintiff's ability to stay on task in RFC)). As explained above, such circumstances do not exist here.

Thus, Plaintiff's assignment of error entitles her to no relief.

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 11) be denied,

14

that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be granted, and that judgment be entered for Defendant.

                                           /s/ L. Patrick Auld
                                                   **L. Patrick Auld**
                                       **United States Magistrate Judge**

September 23, 2016